IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEATHER WOOD, | CIVIL DIVISION |
| Plaintiff, | Civil Action No.   2:21-cv-1083 |
| v. | |
| DONEGAL TOWNSHIP, PENNSYLVANIA, KATHLEEN CROFT and EDWARD SHINGLE, | |
| Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT

AND NOW, comes Plaintiff Heather Wood by and through counsel Robert A. Bracken, Esquire and Bracken Lamberton, LLC and files the following Complaint and avers as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, Heather Wood, is a resident of the State of West Virginia, with an address of 63 Crawford Avenue, Cameron, WV 26033. Plaintiff is an employee of Defendant Donegal Township, Pennsylvania.

2. Defendant, Donegal Township, Pennsylvania ("Donegal") is a government entity with its address located at 34 N. Liberty Street, West Alexander, PA 15376. Due to an issue at that location, Donegal Township is temporarily located at 727 Old National Pike, Claysville, PA 15323.

3. Defendant, Kathleen Croft, is an adult individual with an address of 900 Dry Ridge Road, West Alexander, PA 15376. Croft is an elected Supervisor of Donegal Township.

4. Defendant, Edward Shingle, is an adult individual with an address of 385

Lane Road, West Alexander, PA 15376. Shingle is an elected Supervisor of Donegal Township.

5. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The filing also constituted an initiation of proceedings with the Pennsylvania Human Relations Commission pursuant to and by operation of the work sharing agreement between the EEOC and that agency.

6. Plaintiff was issued a Notice of Right to Sue from the United States Department of Justice, which was mailed to Plaintiff on May 24, 2021. A copy of the Notice is attached as Exhibit 1.

7. Plaintiff has complied with all conditions precedent to filing this Complaint.

8. The Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

9. Venue is appropriate in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in Washington County, Pennsylvania.

## FACTUAL ALLEGATIONS

10. On January 7, 2019, Donegal hired Plaintiff as the Assistant Township Secretary/Treasurer.

11. Plaintiff was to report to Tami Iams, who was an elected Supervisor of Donegal Township and in charge of the Office and Water Department.

12. Plaintiff's first day at work was January 14, 2019.

13. From the start of her employment and moving forward, Kathleen Croft, another elected Supervisor of Donegal Township, attempted to prevent Plaintiff from performing her job duties, which included utilizing Donegal Township computers.

14. As Plaintiff would learn, Ms. Croft was concerned that Plaintiff would uncover information pertaining to Ms. Croft's unlawful, conflicted and/or inappropriate conduct.

15. On January 16, 2019, Plaintiff complained to Ms. Iams about Ms. Croft's conduct and the irregularities that Plaintiff found with respect to permitting and other matters that were Ms. Croft's responsibility.

16. Thus, Plaintiff made a good-faith report of wrongdoing and/or waste.

17. For example, Plaintiff identified out-of-date permits and permits issued by Ms. Croft without applications or board approval.

18. Plaintiff also raised the fact that Ms. Croft was altering documents on Plaintiff's computer and downloading and deleting files.

19. For example, Ms. Croft (with the assistance of her sister-in-law) changed numbers and codes within QuickBooks prior to Board approval.

20. The situation, however, was not rectified and Ms. Croft continued to try to prevent Plaintiff from performing her job and her actions created a hostile work environment.

21. Ms. Croft's interference with Plaintiff's job duties throughout Plaintiff's employment led to the enactment of a Township Resolution prohibiting Township Supervisors from performing functions that had been assigned to township employees, such as Plaintiff, yet, Ms. Croft continued to violate the Township Resolution while engaging in other offensive, inappropriate conduct directed towards Plaintiff.

22. On January 23, 2019, Plaintiff attended a meeting (at her request) with the five Donegal Township Supervisors and Solicitor and complained that she was being subjected to a hostile work environment and being harassed by Ms. Croft.

23. Plaintiff also raised the troubling findings that she made with respect to Ms. Croft's apparent unlawful, conflicted and inappropriate conduct.

24. The hostile work environment of which Plaintiff complained and continued to complain about during her employment included sex-based and disability-based hostility.

25. For example, Ms. Croft falsely accused Plaintiff of having an affair with a co-worker and made other derogatory sex-based comments about Plaintiff.

26. Also, Plaintiff suffers with depression and anxiety and she was often disparaged regarding her mental health conditions.

27. Tom Greaves, another elected Supervisor of Donegal Township, discussed details of Plaintiff's private medical information and mental health treatment.

28. Following the January 23, 2019 meeting, Ms. Croft and Edward Shingle, another Township Supervisor, sought to terminate Plaintiff's employment.

29. Ms. Croft and Mr. Shingle sought to terminate Plaintiff because of her protected activity.

30. The following day, Ms. Croft retaliated against Plaintiff by typing a word document in large font stating that Plaintiff was not qualified.

31. On January 25, 2019, two days after Plaintiff engaged in protected activity, Ms. Croft told Sharon Balach not to list Plaintiff's name on a directory as Plaintiff "wouldn't be there long enough."

32. Thereafter, Ms. Croft continued harassing and retaliating against Plaintiff.

33. For example, on January 30, 2019, Ms. Croft accused Plaintiff of being a thief and having been arrested.

34. On other occasions, Ms. Croft went to the office, sat closely to Plaintiff,

invaded Plaintiff's personal space, and refused to move when asked by Plaintiff.

35. Ms. Croft even threw paper balls into Plaintiff's hair while in the office.

36. On February 25, 2019, in direct violation of the Township Resolution, Ms. Croft copied documents from Plaintiff's personnel file and placed them into her personal handbag.

37. Upon information and belief, Ms. Croft also emailed Plaintiff's personal information to Ms. Croft's personal email address.

38. Mr. Croft disparaged Plaintiff on Facebook.

39. Ms. Croft falsely accused Plaintiff of stalking her.

40. On another occasion, Ms. Croft opened and looked through Plaintiff's purse while Plaintiff was in the bathroom.

41. On March 21, 2019, Ms. Croft and Mr. Shingle approached Plaintiff and demanded that she lock her desk, shut her computer down, and leave.

42. Thereafter, Mr. Shingle went through and searched Plaintiff's private belongings; thus, once again, invading her privacy.

43. Certain of Plaintiff's belongings were not returned, such as pictures.

44. Plaintiff then attempted to work from home.

45. Ms. Croft – in violation of the aforementioned Township Resolution – performed certain of Plaintiff's duties while Plaintiff was out of the office.

46. In late March 2019, Ms. Croft and Ms. Shingle falsely accused Plaintiff of stealing Donegal documents.

47. On May 2, 2019, Plaintiff was informed by Mr. Shingle that she was not to

work from home and by doing so Plaintiff was being insubordinate.

48. On May 10, 2019, Plaintiff was informed by Mr. Shingle that he was now the Township Supervisor to whom Plaintiff was to report.

49. Mr. Shingle stated that Plaintiff was to remain on paid leave and was not permitted to work from home.

50. Mr. Shingle also demanded all computer passwords and documentation from Plaintiff.

51. On May 16, 2019, Plaintiff returned to her office to collect belongings, yet Mr. Shingle and Ms. Croft physically attempted to restrain her from leaving.

52. Ms. Croft grabbed and scratched Plaintiff's wrist.

53. Yet, Ms. Croft falsely accused Plaintiff of assaulting her.

54. Additionally, Ms. Croft, Mr. Shingle and even their family members have publicly defamed and disparaged Plaintiff by accusing her of theft.

55. On August 19, 2019, the Donegal Township Supervisors voted 3-2 to eliminate Plaintiff's position.

56. In reality, Mr. Shingle and Ms. Croft succeeded with their plan to terminate Plaintiff's employment as a result of her engaging in protected activity.

57. In fact, on November 5, 2019, Mr. Shingle told various individuals that Plaintiff was fired.

58. Thus, the position elimination is mere fiction and pretext.

59. The pattern of retaliation continued following Plaintiff's termination and after Plaintiff engaged in further protected activity by filing with the EEOC and PHRC.

60. Plaintiff filed grievances through her union and arbitration hearings were held.

61. On January 6, 2021, the arbitrator found that Donegal did not meet its burden of proving "just cause" to terminate Plaintiff and that the contention that Plaintiff's position was eliminated "smacks of pretext."

62. Then, the arbitrator issued the following award:

> The Grievances are sustained to the extent provided herein.
>
> The Grievant shall be made whole, including reinstatement, back pay, restoration of benefits and seniority, and the recission of any discipline, including restoration of any benefits lost prior to termination. The Township is entitled to set-off for any unemployment compensation benefits or interim earning received by Grievant.
>
> If the behavior of the Supervisor(s) alleged by the Union is accurate, including the treatment of Grievant, that behavior must cease immediately. Both parties are ordered to comply with the collective bargaining agreement.
>
> Furthermore, this matter is hereby remanded to the parties in an effort to resolve the issues of the specific monetary value of the damages set forth above as well as the issues regarding the duties associated with the assistant secretary or treasurer functions.
>
> If the parties are unable to agree upon any of these matters, further proceedings shall be conducted.
>
> Finally jurisdiction shall be retained consistent with the foregoing opinion in order to ensure compliance with this Award.

63. Donegal did not appeal the arbitration award.

64. Despite the arbitration award and the arbitrator's admonishment of Defendants' conduct, Defendants delayed and prevented Plaintiff from being promptly reinstated and made whole.

65. Moreover, Ms. Croft and Mr. Shingle have continued to harass Plaintiff while attempting to take action to her detriment.

66. This behavior is retaliatory.

67. For example, on or about June 18, 2021, Mr. Shingle demanded that Plaintiff allow him in her office, yelled at her, pointed his finger at her, and told her to "shut up."

68. Ms. Croft refused to sign checks for Plaintiff's mileage reimbursements.

69. Mr. Shingle's mother, at Mr. Shingle's direction and/or encouragement, has even made a frivolous Right-to-Know request seeking to obtain information from Plaintiff's personal cell phone.

70. Plaintiff has been retaliated against in violation of Title VII, the ADA, the PHRA and the Pennsylvania Whistleblower Law as a result of her engaging in protected activity.[1]

## COUNT I - UNLAWFUL RETALIATION
*Plaintiff v. All Defendants*

71. Plaintiff incorporates by reference herein Paragraphs 1 through 70 of the Complaint as if more fully set forth at length herein.

72. Donegal's conduct described above and herein constitutes retaliation, in violation of Title VII and the ADA.

73. All Defendants' conduct described above and herein constitutes retaliation in violation of the PHRA.

74. Defendants' retaliation against Plaintiff, which includes but is not limited to harassment, hostility, battery and termination, was the result of her objecting to the conduct she was experiencing as set forth throughout the Complaint.

75. As a direct and proximate result of Defendants' unlawful, willful, deliberate

---

[1] Plaintiff filed a Praecipe for Writ of Summons in the Court of Common Pleas of Washington County, Pennsylvania to toll the statute of limitations as to her Pennsylvania Whistleblower Law claim and other tort claims. Though Plaintiff was willing to consolidate and proceed with all claims in this lawsuit, Defendants refused to consent. Accordingly, a separate lawsuit regarding those Pennsylvania claims is pending.

retaliation, Plaintiff incurred substantial losses, continuing in their nature, including but not limited to loss of wages, harm to her reputation, adverse effects on her career, physical and emotional pain and suffering, medical care, treatment and expenses, and diminished earning capacity.

76. As a result of Defendants' retaliatory conduct, Plaintiff is entitled to all available damages, including but not limited to damages for the following: (1) all available compensatory damages; (2) economic and non-economic losses; (3) attorneys' fees and costs; and (4) punitive damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests judgment be rendered in her favor and against Defendants in an amount to be determined with attorneys' fees and costs assessed as well as any other relief or damages deemed proper by the Court.

## COUNT II - AIDING AND ABETTING
*Plaintiff v. Kathleen Croft and Edward Shingle*

77. Plaintiff incorporates Paragraphs 1 through 76 of the Complaint as if fully set forth herein.

78. Croft and Shingle aided and abetted the harassment, discrimination and retaliation set forth throughout this Complaint in violation of Section 955(e) of the Pennsylvania Human Relations Act

79. As a direct and proximate result of these Defendants' unlawful conduct, Plaintiff incurred substantial losses, continuing in their nature, including but not limited to loss of wages and loss of benefits, harm to her reputation, adverse effects on her career and diminished earning capacity.

80. As a direct and proximate result of these Defendants' unlawful conduct, Plaintiff suffered from physical problems including emotional distress and anxiety.

81. As a result of these Defendants' conduct, Plaintiff is entitled to all available

damages pursuant to the PHRA, including but not limited to damages for the following:  (1) all available compensatory damages; (2) economic and non-economic losses; (3) equitable relief including employment, reinstatement and promotion; and (4) attorneys' fees and costs.

     WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests judgment be rendered in her favor and against these Defendants in an amount to be determined with attorneys' fees and costs assessed as well as any other relief or damages deemed proper by the Court.

**BRACKEN LAMBERTON, LLC**

By _/s/ Robert A. Bracken_
Robert A. Bracken
707 Grant Street
Gulf Tower, Suite 1705
Pittsburgh, PA 15219
*Counsel for Plaintiff*