**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HEATHER WOOD, | ) | |
| | ) | Civil Action No. 21-1083 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lenihan |
| | ) | |
| DONEGAL TOWNSHIP, | ) | |
| PENNSYLVANIA, | ) | |
| KATHLEEN CROFT, and | ) | |
| EDWARD SHINGLE, | ) | |
| | ) | ECF Nos. 18 and 20 |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Presently before the Court are the Motions to Dismiss filed by Defendants Kathleen Croft and Edward Shingle (ECF No. 18) and Defendant Donegal Township (ECF No. 20). For the reasons discussed below, the motions will be denied.

<u>FACTS</u>

Plaintiff Heather Wood ("Wood") brings this action under Title VII, the ADA, and the PHRA. ECF No. 17 at ¶¶ 70-76. She also alleges aiding and abetting harassment and discrimination claims pursuant to Section 955(e) of the PHRA. *Id.* at ¶¶ 77-81.

Defendant Donegal Township ("Donegal") hired Wood on January 7, 2019, as an assistant secretary/treasurer, and she started work on January 14, 2019. *Id.* at ¶¶ 10, 12. Defendants Kathleen Croft ("Croft") and Edward Shingle ("Shingle") are elected supervisors of Donegal Township. *Id.* at ¶¶ 3-4. Wood claims that, from the start of her employment, Croft "attempted to prevent her from performing her job duties," and Croft's actions "created a hostile work environment." *Id.* at ¶¶ 13, 20. On January 23, 2019, Wood "attended a meeting (at her request) with the . . . Donegal Township Supervisors and Solicitor". *Id.* at ¶ 22. During this

meeting, Wood complained of Croft's misconduct and harassment which included "sex-based and disability-based hostility." *Id.* at ¶¶ 22-24. In terms of the sex-based hostility, Wood claims that Croft "accused [Wood] of having an affair with a co-worker and made other derogatory sex-based comments about [Wood]." *Id.* at ¶ 25. Regarding the disability-based hostility, Wood claims that Croft "disparaged" Wood regarding her depression and anxiety mental health conditions and that the supervisors discussed her mental health treatment. *Id.* at ¶ 26. Wood claims that the supervisor meeting constituted protected activity under Title VII, the ADA, and the PHRA. *Id.* at ¶¶ 29, 31.

After the supervisor meeting, Wood alleges that Croft continued to harass her. *Id.* at ¶ 30. Wood alleges the following incidents occurred:

> Ms. Croft retaliated against Plaintiff by typing a word document in large font stating that Plaintiff was not qualified. On January 25, 2019 . . . Ms. Croft told [another employee] not to list Plaintiff's name on a directory as Plaintiff "wouldn't be there long enough." . . . Thereafter, Ms. Croft continued harassing and retaliating against Plaintiff. For example, on January 30, 2019, Ms. Croft accused Plaintiff of being a thief and having been arrested. On other occasions, Ms. Croft went to the office, sat closely to Plaintiff, invaded Plaintiff's personal space, and refused to move when asked by Plaintiff. Ms. Croft even threw paper balls into Plaintiff's hair while in the office. On February 25, 2019, in direct violation of the Township Resolution, Ms. Croft copied documents from Plaintiff's personnel file and placed them into her personal handbag. Upon information and belief, Ms. Croft also emailed Plaintiff's personal information to Ms. Croft's personal email address. Mr. [sic] Croft disparaged Plaintiff on Facebook. Ms. Croft falsely accused Plaintiff of stalking her. On another occasion, Ms. Croft opened and looked through Plaintiff's purse while Plaintiff was in the bathroom.

*Id.* at ¶¶ 30-40.

According to Wood, Croft and Shingle told her to leave the office on March 21, 2019. *Id.* at ¶ 41. Wood claims that Shingle invaded her privacy after she left by going through her

personal belongings and taking items, such as pictures. *Id.* at ¶¶ 42-43. While attempting to work from home, Wood claims Croft started performing her duties, and Shingle told Wood to stop working from home and remain on paid leave. *Id.* at ¶¶ 44-47, 49. Wood alleges that when she returned to the office on May 16, 2019, to collect her belongings, Croft and Shingle attempted to physically restrain her from leaving. *Id.* at ¶ 51. Wood claims Croft assaulted her by grabbing her and causing a scratch on her wrist. *Id.* at ¶ 52. Months later, on August 19, 2019, the Donegal Township Supervisors voted to eliminate Wood's position, thus resulting in her termination. *Id.* at ¶ 55. Wood further claims that Croft told "various individuals" that Wood was fired. *Id.* at ¶ 57.

On February 14, 2020, Wood filed a charge with the EEOC and PHRC. ECF No. 17 at ¶¶ 59-60; ECF No. 26-1. Wood claims that her EEOC filing constituted protected activity under Title VII and the ADA. ECF No. 17 at ¶ 59. Following the EEOC filing, Wood filed grievances with her union, and an arbitration hearing commenced on January 6, 2021. *Id.* at ¶ 60. During the arbitration hearing, the arbitrator ordered an award for Wood on the grounds that "Donegal did not meet its burden of proving 'just cause' to terminate [Wood] and that the contention that [Wood's] position was eliminated 'smacks of pretext.'" *Id.* at ¶¶ 61-62. Although Donegal did not appeal the arbitration award, Wood alleges that Defendants "delayed and prevented" Wood from being reinstated and receiving her arbitration award. *Id.* at ¶¶ 63-64.

After being reinstated, Wood claims that Croft and Shingle resumed harassing her. *Id.* at ¶ 65. Wood claims that on June 18, 2021, Shingle "demanded that [Wood] allow him in her office, yelled at her, pointed his finger at her, and told her to 'shut up.'" *Id.* at ¶ 67. Wood also alleges Croft refused to sign checks for Wood's mileage reimbursement. *Id.* at ¶ 68. In addition, Wood claims that Shingle's mother, at Shingle's direction or encouragement, made a "frivolous

Right-to-Know request seeking to obtain information from Wood's personal cell phone." *Id.* at ¶ 69.

On August 14, 2021, Wood initiated the present action against Donegal under Title VII, the ADA, and the PHRA and against Croft and Shingle under the PHRA on the grounds that they retaliated against her for engaging in protected activities by complaining to the Donegal Township Supervisors of Croft's conduct and filing with the EEOC and PHRC. *Id.* at ¶¶ 70-81. Wood also alleges an aiding and abetting claim against Croft and Shingle under the PHRA. *Id.* at ¶¶ 77-81. In addition, Wood has brought a separate lawsuit under the Pennsylvania Whistleblower Law, which is pending in the Washington County Court of Common Pleas. *Id.* at ¶ 70. As a result of Defendants' retaliation, Wood claims she incurred the following injuries: "loss of wages, harm to her reputation, adverse effects on her career, physical and emotional pain and suffering, medical care, treatment and expenses, and diminished earning capacity." *Id.* at ¶¶ 75, 79.

After Wood filed her Amended Complaint on October 26, 2021, Croft and Shingle filed a motion to dismiss on November 8, 2021, and Donegal filed a motion to dismiss on November 9, 2021. ECF Nos. 17, 18, 20. In response, Wood filed a motion to strike Donegal's motion to dismiss on November 11, 2021, which the Court denied on November 12, 2021. ECF Nos. 21, 25. Thereafter, Wood filed responses in opposition to the motions to dismiss. ECF Nos. 23, 24. The motions to dismiss are now ripe for review.

<u>LEGAL STANDARD</u>

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward

> with "a short and plain statement of the claim showing that the
> pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556
> U.S. 662, 678 (2009), a claimant must state a "plausible" claim for
> relief, and "[a] claim has facial plausibility when the pleaded
> factual content allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged." Although
> "[f]actual allegations must be enough to raise a right to relief above
> the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S.
> 544, 555 (2007), a plaintiff "need only put forth allegations that
> raise a reasonable expectation that discovery will reveal evidence
> of the necessary element." *Fowler*, 578 F.3d at 213 (quotation
> marks and citations omitted); *see also Covington v. Int'l Ass'n of
> Approved Basketball Officials*, 710 F.3d 114, 117-18 (3d Cir.
> 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

<u>ANALYSIS</u>

Retaliation claims under Title VII, the ADA, and the PHRA are all analyzed using the

same framework. *Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561, 567 (3d Cir. 2002). As such, the

plaintiff must plead: "(1) that she engaged in activity protected by Title VII or ADA; (2) the

employer took an adverse employment action against her; and (3) there was a causal connection

between her participation in the protected activity and the adverse employment action." *Moore v.

City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006).

An individual engages in "protected activity" when they "oppos[e] any act or practice

made unlawful by [Title VII or the ADA] or initiat[e] or participat[e] in any manner in an

investigation, proceeding, or hearing under [Title VII or the ADA]." 42 U.S.C. § 12203(a); 42

U.S.C. § 2000e-3(a). "'Opposition' to discrimination can take the form of 'informal protests of

discriminatory employment practices, including making complaints to management.'" *Moore*,

461 F.3d at 343 (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del, Inc.*, 450 F.3d

130, 135 (3d Cir. 2006)). When opposing discrimination, "'the employee must hold an

objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title

VII.'" *Moore*, 461 F.3d at 341. Similarly, "a plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (quotation omitted).

In Count 1 of Wood's Amended Complaint, Wood alleges that Donegal, Croft, and Shingle are liable for unlawful retaliation. Specifically, Wood alleges that Donegal is liable for retaliation under Title VII, the ADA, and the PHRA, and Croft and Shingle are liable for retaliation under the PHRA only. In Count 2 of Wood's Amended Complaint, Wood alleges that Croft and Shingle are also liable for aiding and abetting harassment and discrimination under Section 955(e) of the PHRA. Upon review of Wood's Amended Complaint, the Court will deny both motions to dismiss.

**A. Defendant Donegal's Motion to Dismiss.**

Donegal argues that Wood failed to demonstrate that she engaged in protected activities, thus precluding relief under Title VII, the ADA, and the PHRA. However, upon review of Wood's Amended Complaint, Wood has pled facially plausible retaliation claims under Title VII, the ADA, and the PHRA against Donegal.

To state a plausible retaliation claim, the plaintiff must plead: "(1) that she engaged in activity protected by Title VII or ADA; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore,* 461 F.3d at 341.

Regarding the first element, Wood has sufficiently pled that she engaged in protected activities. The statutory language of Title VII and the ADA indicates that an individual engages in "protected activity" when they "oppos[e] any act or practice made unlawful by [Title VII or

the ADA] or initiat[e] or participat[e] in any manner in an investigation, proceeding, or hearing under [Title VII or the ADA]." 42 U.S.C. § 12203(a); 42 U.S.C. § 2000e-3(a).

According to Wood, the first protected activity occurred when she complained to the supervisors and solicitor during the meeting on January 23, 2019 ("supervisor meeting"). During the supervisor meeting, Wood opposed and complained of the sex-based and disability-based harassment she experienced from Croft, which would be unlawful under Title VII and the ADA. As the Third Circuit has held, "'[o]pposition' to discrimination can take the form of 'informal protests of discriminatory employment practices, including making complaints to management.'" *Moore*, 461 F.3d at 343 (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). Because Wood's complaints constitute opposition to discrimination, the Court finds that the supervisor meeting was a protected activity.

The Court also finds that the second protected activity occurred when Wood filed a complaint with the EEOC and PHRC ("EEOC filing"). Per the statutory language, an individual also engages in protected activity when they "initiat[e] or participat[e] in any manner in an investigation, proceeding, or hearing under [Title VII or the ADA]." 42 U.S.C. § 12203(a); 42 U.S.C. § 2000e-3(a). Since the EEOC filing initiated an investigation and later arbitration proceedings, the EEOC filing was a protected activity.

Donegal argues, however, that the supervisor meeting and EEOC filing were not protected activities. In its brief, Donegal argues that Wood did not claim that the discriminatory conduct which occurred before the supervisor meeting and EEOC filing was motivated by her sex or disability to the extent that a reasonable or objective person would also believe it was discrimination. Specifically, Donegal asserts that Wood did not allege sufficient facts to support a reasonable inference that sex-based and disability-based discrimination occurred. For instance,

to support her sex-based discrimination allegation, Donegal contends that Wood only states that Croft accused her of having an affair with a co-worker and made "other derogatory sex-based comments." ECF No. 17 ¶ 25. Similarly, to support her disability-based discrimination allegation, Donegal contends that Wood only states that she was "disparaged for her mental health" and that the supervisors discussed her mental health treatment. *Id.* at ¶ 26.

Although Wood presented minimal details to support that discrimination occurred, she is not obligated to prove that discrimination existed prior to each protected activity for the purposes of a retaliation claim. In this regard, the Third Circuit has held that "a plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" *Aman*, 85 F.3d at 1085 (quotation omitted). Although Wood and Donegal dispute whether discrimination occurred, this is a non-issue for the purpose of raising a retaliation claim. Upon review of the Amended Complaint, the Court finds that Wood appears to have had a good faith and reasonable belief that discrimination occurred. A reasonable person would likely believe that derogatory sex-based comments and disparagement of mental health disability are violations of Title VII and the ADA. A reasonable belief of this nature may be sufficient motivation to pursue protected activities, such as complaining to supervisors or filing with the EEOC. In accordance with precedential case law and the statutory language of Title VII and the ADA, the Court finds that Wood engaged in protected activities.

Having found that the supervisor meeting and EEOC filing were protected activities, the Court turns to the second retaliation claim element: whether Defendants took adverse employment actions ("adverse actions") against Wood. Upon review of the Amended Complaint, the Court finds that Wood pled sufficient facts from which it can be inferred that Donegal, by and through its elected supervisors Croft and Shingle, took adverse actions against Wood.

After the supervisor meeting, Wood alleges Croft insulted and verbally harassed her in the office and on social media on many occasions. Wood also alleges Croft threw paper balls at her and invaded her desk space and personal belongings. When Wood was told to leave the office in March 2019, she claims that Shingle went through her personal belongings and took items, such as pictures. When Wood returned to the office on May 16, 2019 to collect her belongings, she claims Croft and Shingle attempted to physically restrain her from leaving, and Croft assaulted her by grabbing her and scratching her wrist. Months later, on August 19, 2019, Wood's role was eliminated. After the EEOC filing and arbitration hearing, Wood alleges that Donegal delayed delivering the arbitration award and reinstating her. Once she was reinstated, Wood claims that Croft and Shingle continued to verbally harass her, and Croft specifically refused to sign checks for Wood's mileage reimbursement.

Accepting Wood's factual allegations as true for the purposes of the motion to dismiss, Wood has pled sufficient facts which allow the Court to infer that Defendants engaged in adverse actions such as harassment, mistreatment, and termination. Although Croft and Shingle caused the majority of incidents described above, the Court can infer that Donegal is liable for their actions since they were acting in their supervisory roles for Donegal Township. ECF No. 17 at ¶¶ 3-4. The incidents described in Wood's Amended Complaint and summarized above provide clear, detailed examples of the extent of harassment and mistreatment Wood experienced by Croft and Shingle.  Considering the facts alleged in the light most favorable to Wood, the Court finds that she has pled sufficient facts from which it can be inferred that adverse actions occurred.

Regarding the third retaliation element, the Court can infer a causal connection between Wood's protected activities and Donegal's adverse employment actions. The timeline of events

described in Wood's Amended Complaint and summarized above reflect that adverse actions occurred after both the supervisory meeting and the EEOC filing. In addition, Donegal did not provide any arguments to disprove this timeline or challenge whether a causal connection existed between the protected activities and the adverse actions. Accordingly, Wood provided a sufficient timeline to support an inference that there is a causal connection between her protected activities and the adverse employment actions.

In summary, Wood has alleged sufficient facts to show (1) that she engaged in protected activities, (2) Donegal, by way of their supervisors, committed adverse actions, and (3) there is a causal connection between Wood's protected activities and Donegal's adverse actions. As such, Wood has pled sufficient facts in her Amended Complaint to allege a plausible retaliation claim under Title VII, the ADA, and the PHRA, and therefore, the Court will deny Donegal's motion to dismiss.

**B.  Defendants Croft and Shingle's Motion to Dismiss.**

Croft and Shingle appear to be arguing that because they are elected supervisors of Donegal Township, they are employees.  As such, they submit that, under Title VII and the ADA, employees cannot be liable for retaliation in their individual capacities. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996); *Koslow v. Pennsylvania*, 302 F.3d 161, 177-78 (3d Cir. 2002). Therefore, Croft and Shingle ask the Court to dismiss the Title VII and ADA claims against them in their individual capacities. However, this argument is moot. Upon close reading of Wood's Amended Complaint and Wood's clarification in her opposition brief, it is apparent that Wood is only suing Croft and Shingle for retaliation claims under the PHRA. In response to Wood's opposition brief, Croft and Shingle concede in their reply brief that Wood is not suing them under Title VII and the ADA. As such, Croft and

Shingle's motion to dismiss the Title VII and ADA retaliation claims against them should be dismissed as moot.[1]

Employees can, however, be liable for retaliation and aiding and abetting in their individual capacities under the PHRA. 43 P.S. §§ 955(d)-(e). As mentioned, PHRA retaliation claims are analyzed in the same manner as Title VII and ADA retaliation claims. *Fogleman*, 283 F.3d at 567.

Croft and Shingle present three main arguments supporting their motion to dismiss: (1) Wood failed to allege valid protected activities, (2) Wood failed to establish a causal connection between the EEOC filing and the adverse actions, and (3) Wood did not assert any federal claims against Croft and Shingle. Regarding the PHRA aiding and abetting harassment and discrimination claim in Count 2, Croft and Shingle argue that the claim is without merit for the same reasons that the PHRA retaliation claim in Count 1 is without merit.

Turning to their first argument, Croft and Shingle argue that the supervisor meeting and the EEOC filing were not valid protected activities because an objectively reasonable person, in good faith, would not believe that the conduct Wood opposed was discriminatory. Specifically, Croft and Shingle argue that Wood did not allege sufficient facts to support that she held an objectively reasonable and good faith belief that she was subjected to sex-based and disability-based discrimination.

For example, Croft and Shingle assert that Wood's complaints of a hostile work environment, which include sex-based and disability-based hostility, are insufficient to state retaliation claims under Title VII, the ADA, and the PHRA. To support this argument, Croft and Shingle cite to *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) and *Atkinson v.*

---

[1] Because Croft and Shingle's motion to dismiss is moot, the Court need not reach their alternative argument that Donegal employed less than fifteen employees, and thus Title VII and ADA do not apply.

*Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006).The Court finds that the facts of these cases are distinguishable. In addition, both involved the dismissal of a retaliation claim at the summary judgment stage, not the motion to dismiss stage. . The *Krouse* court held that the plaintiff could not establish his ADA retaliation claim because he presented insufficient evidence to establish a causal link between his protected activity and his employer's adverse action. *Krouse*, 126 F.3d at 504. The *Atkinson* court held the plaintiff could not establish her Title VII and PHRA retaliation claims because she failed to exhaust her administrative remedies through the EEOC before bringing an action under Title VII. *Atkinson*, 460 F.3d at 453 ("Atkinson's Title VII retaliation claims were properly dismissed by the District Court because the allegations in her complaint did not fall 'fairly within the scope of the . . . EEOC complaint, or the investigation arising therefrom.'"). Both of these decisions occurred after the parties had an opportunity to develop a record in the cases.

Like Donegal, Croft and Shingle argue that an objectively reasonable person, in good faith, would not believe that accusations of a sexual affair with a co-worker, derogatory sex-based comments and disparagement of mental health constitute sex-based and disability-based discrimination. As previously discussed, however, Wood is not obligated to prove that discrimination occurred prior to each protected activity for the purposes of a retaliation claim. *Aman*, 85 F.3d at 1085.

Croft and Shingle also argue that Wood's complaints of a hostile work environment, which included sex-based and disability-based hostility, are insufficient to state retaliation claims under Title VII, the ADA, and the PHRA. However, the standards for assessing a hostile work environment claim and a retaliation claim are different. In *Kengerski v. Harper*, the Third Circuit held that to succeed on a hostile work environment claim, "a plaintiff needs to show that the

environment was actually hostile, i.e., that the offensive conduct at work was either 'severe' or 'pervasive." 6 F.4th 531, 537 (3d Cir. 2021) (citing *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017)). In contrast, "for a retaliation claim a plaintiff need not show that his working environment in hindsight was actually hostile, only that he held an objectively reasonable belief that it was." *Id.* In accordance with this holding, Wood is not obligated to prove that the environment was actually hostile or the severity of the hostility for the purposes of a retaliation claim.

Taking Wood's factual allegations as true, the Court can infer that Wood held an objectively reasonable, good faith belief that she experienced discrimination and a hostile work environment under Title VII, the ADA, and the PHRA. Therefore, the Court finds that Wood engaged in valid protected activities sufficient to state a plausible claim for retaliation.

Next, Croft and Shingle argue that there is no causal connection between the EEOC filing and the adverse actions which followed. Wood filed her complaint with the EEOC on February 14, 2020. As identified in Croft and Shingle's reply brief, the next alleged adverse action did not occur until January 6, 2021, when the arbitration decision was rendered or shortly thereafter. In light of these dates, Croft and Shingle argue that too much time passed between February 2020 and January 2021, and thus the Court may not infer a causal connection between the EEOC filing and the adverse actions that took place after the arbitration decision. To support this argument, Croft and Shingle cite to *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) and *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007). In both cited cases, the Third Circuit held that a gap of three to five months between a protected activity and an adverse action alone could not create an inference of a causal connection. *Id.*

The time gap between Wood's EEOC filing and the alleged adverse actions weighs

against the inference of a causal connection. *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000) ("[A]lthough the 'mere passage of time is not legally conclusive proof against retaliation,' we have indicated that the passage of a long period of time between the protected activity and an alleged retaliatory action weighs against a finding of a causal link where there is no evidence of retaliatory animus during the intervening period." (citing *Krouse*, 126 F.3d at 503-04; *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997))). However, the facts in this case are that Plaintiff was on paid leave during that time and thus was not present at the workplace in order to be subject to any adverse action. After her reinstatement, Wood alleges Croft and Shingle resumed harassing her. For example, Wood claims that on June 18, 2021, Shingle "demanded that [Wood] allow him in her office, yelled at her, pointed his finger at her, and told her to 'shut up.'" Wood also alleges Croft refused to sign checks for Wood's mileage reimbursement. In addition, Wood claims that Shingle's mother, at Shingle's direction or encouragement, made a "frivolous Right-to-Know request seeking to obtain information from Wood's personal cell phone." Taken as a whole, the alleged facts are sufficient at this stage of the litigation to suggest that a causal connection exists between Wood's EEOC complaint and the Defendants' subsequent harassment.

Lastly, Croft and Shingle argue that because Wood has only brought PHRA claims against them and not any federal claims, their motion to dismiss should be granted. The Court rejects this argument on the basis of supplemental jurisdiction. Here, supplemental jurisdiction applies since the claims against Donegal, Croft, and Shingle arise from the same set of facts and, therefore, the same case or controversy. 28 U.S.C. § 1367(a). The alleged adverse actions giving rise to the retaliation claim were also effectuated by Croft and Shingle specifically. In addition, since the Court will deny Donegal's motion to dismiss, a federal claim will remain, contrary to

Croft and Shingle's argument.

In summary, Wood has pled sufficient facts in her Amended Complaint to allege a plausible retaliation claim under the PHRA. As detailed in the analysis above, the facts suggest that (1) Wood engaged in protected activities by complaining to the supervisors and filing with the EEOC, (2) she experienced adverse employment actions, and (3) a causal connection between the protected activities and the actions may be inferred. As such, the Court will deny Croft and Shingle's motion to dismiss on the grounds that Wood has pled sufficient facts in her Amended Complaint to allege a plausible retaliation claim under the PHRA.

An appropriate Order will follow.

Dated: August 4, 2022

BY THE COURT

LISA PUPO LENIHAN
United States Magistrate Judge

cc:     All Counsel of Record
        *Via CM/ECF Electronic Mail*